UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LIZVETTE COLON,

                            Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

DECISION & ORDER

18-CV-340P

## PRELIMINARY STATEMENT

Plaintiff Lizvette Colon ("Colon") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket ## 6, 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 13). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Colon's motion for judgment on the pleadings is denied.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II. **Colon's Contentions**

Colon contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 14). First, Colon challenges the ALJ's RFC assessment on the grounds that the ALJ failed to properly account for Colon's limitations interacting with men. (Docket ## 9-1 at 11-14; 14 at 1-4). Second, Colon argues that the ALJ's credibility analysis was flawed. (Docket ## 9-1 at 14-18; 14 at 4-5).

The Commissioner maintains that the ALJ's RFC assessment properly accounted for limitations associated with Colon's severe impairments of post-traumatic stress disorder ("PTSD") and anxiety. (Docket # 13-1 at 10-13). The Commissioner further contends that the ALJ properly evaluated Colon's credibility. (*Id.* at 13-16).

III. **Analysis**

A. **The ALJ's RFC Assessment**

I turn first to Colon's argument that the ALJ's RFC assessment improperly failed to account for limitations Colon had being around and interacting with men. (Docket ## 9-1 at

4

11-14; 14 at 1-4).¹ Specifically, Colon maintains that the record, especially its references to her "incredibly tumultuous childhood," "makes it clear that [her] PTSD manifest[s] in difficulties being with or around men" and that the ALJ "needed to properly accommodate these limitations – or properly explain why he did not." (Docket # 9-1 at 11). I find that remand is not warranted on this basis.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order). An ALJ should also consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)²).

At steps two and three of the sequential analysis, the ALJ found, in relevant part, that Colon had the severe impairments of anxiety disorder, major depressive disorder, and PTSD,

---

¹ Colon does not argue that the ALJ erred in assessing her physical limitations, and thus the Court does not address that portion of the ALJ's RFC assessment.

² This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

but that none of those impairments, alone or in combination, met or medically equaled an impairment identified in the Listings. (Tr. 22).³ The ALJ further determined that Colon had the RFC to perform light work, but limited Colon to, among other things, "simple, routine, repetitive work at a specific vocational preparation of 1 or 2" and "occasional contact with supervisors, co-workers, and the public." (Tr. 24).

In reaching this determination, the ALJ gave "great weight" to the opinion of Janine Ippolito ("Ippolito"), PsyD, who performed a consultative psychiatric evaluation of Colon on January 10, 2014, and discussed Ippolito's evaluation at length in his decision. (Tr. 25-26, 327-31). At the time of the evaluation, Colon expressed her belief that she could not work "due to anxiety, depression, and pain issues." (Tr. 327). She also reported that for the preceding five months she had been receiving monthly or semimonthly counseling for her depression and anxiety. (*Id.*).

Colon told Ippolito that she experienced dysphoric moods and crying spells and had "struggled with depression throughout most of her life." (Tr. 328). In terms of anxiety symptoms, Colon reported "excessive apprehension, worry, and nervousness," and Ippolito noted that Colon was "restless throughout the evaluation and shook her leg constantly." (*Id.*). Colon reported that she got "overwhelmed easily and ha[d] low stress tolerance." (*Id.*). Colon also stated that she had "experienced some traumatic events in the past," that her "mother [had] mistreated her as a child and that she [had been] 'sold to men' sexually," and that she had been "placed in foster care as a result of this treatment." (*Id.*). Colon reported that she experienced panic attacks, but "had difficulty noting the frequency with which she experience[d] panic attacks." (*Id.*).

---

³ References to page numbers in the Administrative Transcript (Docket # 8) utilize the internal Bates-stamped pagination assigned by the parties.

Upon examination, Dr. Ippolito noted that Colon was "cooperative" and her "manner of relating, social skills, and overall presentation were adequate." (Tr. 329). She maintained appropriate eye contact, spoke fluently, exhibited coherent and goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia, and was alert and oriented. (*Id.*). However, Colon also appeared tense and restless and displayed a dysthymic mood and anxious affect, which impaired her attention, concentration, and memory skills. (*Id.*). Ippolito opined that Colon's insight was "fair to poor" and her judgment was "fair." (Tr. 330).

Colon told Ippolito that she was "able to do cooking, cleaning, laundry, showering, bathing, and dressing independently" and that her daughter's father "usually c[ame] over and d[id] grocery shopping." (*Id.*). Colon preferred not to shop or drive, due to her anxiety. (*Id.*). Ippolito opined that Colon "d[id] not appear to have any significant deficits in adaptive functioning at this time." (*Id.*).

Ippolito diagnosed Colon with generalized anxiety disorder with panic attacks and persistent depressive disorder, among other physical limitations. (*Id.*). In Ippolito's opinion, Colon was moderately limited in her ability to relate adequately with others and appropriately deal with stress, "due to her current emotional distress." (*Id.*). In Ippolito's view, although these limitations were consistent with psychiatric problems, they did "not appear to be significant enough to interfere with [Colon's] ability to function on a daily basis." (*Id.*).

The ALJ afforded "some weight" to the opinion of non-examining state agency consultant L. Hoffman ("Hoffman"), who reviewed the record evidence on January 23, 2014.[4]

---

[4] The ALJ afforded "little weight" to the opinion of Colon's "Care Coordinator" at Evergreen Health Services that she "is unable to work at this time due to her physical and mental health conditions" (Tr. 27). The ALJ reasoned that the one-paragraph opinion was "conclusory in nature and did not give specific functional capabilities or limitations." (Tr. 28). Colon does not challenge the ALJ's determination to give the opinion "little weight."

7

(Tr. 116-27). As the ALJ noted, Hoffman opined that Colon could perform simple work tasks and "while her ability to deal with co-workers and the public would be somewhat reduced, it would be adequate to handle brief and superficial contact." (Tr. 26, 122). Hoffman further stated that Colon's "ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." (*Id.*).

Ippolito's opinion, which Hoffman reviewed, summarized Colon's reports of significant mistreatment during her childhood, including abusive interactions with men. (*See* Tr. 118, 328). Both Ippolito and Hoffman opined that Colon had limitations in her ability to interact with supervisors, co-workers, and the public, although neither of their opinions – nor any other opinion of record – addressed specific limitations relating to interactions with men. The ALJ was entitled to rely upon these opinions – as well as Colon's documented improvement in her anxiety symptoms during periods of treatment with medication and therapy (Tr. 290-91, 336, 339, 354, 355, 399, 423, 424-25), which the ALJ also noted (Tr. 24-26) – in reaching his disability determination. *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants[] since such consultants are deemed to be qualified experts in the field of social security disability").

Colon herself did not identify difficulties interacting with men as an impediment to work in her disability applications (*see* Tr. 116, 128) or reference those difficulties during her hearing before the ALJ (*see generally* Tr. 81-115). At the hearing, Colon testified about issues dealing with people in general, rather than with men specifically. (*See* Tr. 97 ("I don't have a problem walking but it's like I don't like to walk outside[;] [l]ike I – I don't want to really be

8

around too many people"); Tr. 99 ("I've always had difficulty interacting with others because I'm pretty much a loner"); *accord* Tr. 62 (Colon noted in her "Adult Function Report" that she was "a loner" and "stay[ed] home most of the time [because she] fe[lt] nervous or anxious around a lot of people")).[5] In addition, Colon reported in her application that she did not have problems getting along with bosses or others in positions of authority, although she had left her prior job after almost ten years because "they made fun of her conditions." (Tr. 64; *see also* Tr. 357 ("[s]he stated to [therapist] that she recently 'got sick' after working at the same job for 10 years[;] [s]he stated that she was surrounded by males who often made fun of her and sexually harassed her on the job")). Colon's statements are consistent with the social functioning limitations opined by Ippolito and Hoffman, which the ALJ accounted for by limiting Colon to occasional contact with supervisors, co-workers, and the public. (Tr. 24).

Certainly, Colon correctly notes that her medical records include references to anxiety and fears related to interacting with and being around men. (*See* Tr. 350, 357, 386, 424). More often, the records reveal reported "major stressors" and anxieties concerning homelessness, work stress and the eventual loss of her long-held employment, her stressful relationships with her mother and sister, and worries about her daughter. (*See*, *e.g.*, Tr. 296, 302, 358). Indeed, notwithstanding her initial reservations about working with a male therapist, Colon decided to "give it a shot" and developed an ongoing treating relationship with the therapist. (*See* Tr. 357, 354-57). On this record, I cannot conclude that the ALJ erred by not explicitly addressing

---

[5] The fact that no opinion of record specifically limited Colon's interactions with men, and that Colon neither referenced this limitation in her disability applications nor at the hearing, distinguishes this case from *Jacquelyn H. v. Berryhill*, 2018 WL 4102851 (W.D. Va. 2018), on which Colon relies (Docket # 9-1 at 12). *See Jacquelyn H. v. Berryhill*, 2018 WL 4102851 at *8 ("[t]he ALJ provided no other reasoning to support his decision to disregard [claimant's] testimony about her difficulty working around men, her consistent statements to providers in her treatment records with regard to her discomfort around men, her problems with [PTSD] and panic attacks, and the findings of both the consultative and reviewing physicians that [claimant] has a moderate to marked impairment with social functioning and particularly faced difficulty working with men"), *report and recommendation adopted by*, 2018 WL 4101525 (W.D. Va. 2018).

9

Colon's difficulties with men, particularly in the absence of evidence that her mental health providers or the consultative examiner identified that issue as an obstacle to full-time employment that would not otherwise be addressed by her broader social limitations. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision[,] . . . [and] [a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered") (citation and quotation omitted).

Based upon my review of the RFC assessment and the record evidence, I am satisfied that the ALJ's determination is supported by substantial evidence and that remand is not warranted because of the ALJ's failure to reference issues, or include in the RFC specific limitations, relating to Colon's ability to interact with men. *See, e.g.*, *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.) ("[p]laintiff cites to evidence in the record which he maintains provides substantial evidence to support a finding of deficits in adaptive functioning[;] . . . [h]owever, under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[;] [p]laintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record") (citations omitted), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016); *Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's view is not the question[;] rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision") (alterations omitted) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order)).

B. **The ALJ's Credibility Assessment**

I turn next to Colon's contention that the ALJ's credibility analysis is flawed because he failed to sufficiently explain why he discounted Colon's subjective complaints associated with her mental health limitations. (Docket ## 9-1 at 14-18; 14 at 4-5). For the reasons explained below, Colon's credibility challenge is without merit.

An ALJ's credibility assessment should reflect a two-step analysis. *Robins v. Astrue*, 2011 WL 2446371, *4 (E.D.N.Y. 2011). First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *Id.* (citing 20 C.F.R. § 404.1529). Next, the ALJ must evaluate "the intensity, persistence and limiting effects of the symptom, which requires a credibility assessment based on the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)). The relevant factors for the ALJ to weigh include:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate [her] pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of [her] pain or other symptoms; (6) any measures the claimant uses or has used to relieve [her] pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)). Furthermore, "an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence." *Matejka v. Barnhart*, 386 F. Supp. 2d at 205; *accord Hall v. Berryhill*, 2018 WL 6011167, *4 (W.D.N.Y. 2018) ("[i]t is the function of the ALJ, not the court, to assess the credibility of witnesses") (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013) (summary order)).

11

Here, the ALJ found that Colon's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but ultimately concluded that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25). In reaching this conclusion, the ALJ specifically noted that he "duly considered [Colon's] own reports and allegations" and "granted the greatest possible deference to [Colon's] complaints of pain and mental difficulties." (Tr. 28). According to the ALJ, "while the record document[ed] diagnoses of mental impairments, the overwhelming weight of the evidence, including clinical findings and stable treatment, acknowledged activities of daily living, and the opinion of an examining medical source, d[id] not support greater mental limitations [than those] established in the determined [RFC]." (Tr. 29). The ALJ also noted that "the record document[ed] that [Colon] was feeling better and handle[d] anxiety better since starting medication treatment." (*Id.*).

I disagree with Colon that the ALJ's credibility analysis was "too conclusory to stand." (Docket # 9-1 at 14). First, the ALJ referenced and explained records throughout his decision showing that the symptoms of Colon's mental health impairments generally improved with medication. (*See*, *e.g.*, Tr. 24 (referencing Tr. 91 (Colon's disability hearing testimony during which she stated that Depakote "does work for [her] mood altering chemical imbalance")); Tr. 25 (citing Tr. 290-91 (December 2013 treatment note in which Mary Lou George ("George"), LCSW, noted that medication helped Colon's "mood and anxiety," that Colon "has used deep breathing to assist in getting through times of panic and fearfulness," and that Colon's anxiety and depression were "improving"); *id.* (citing Tr. 336-38 (January 2014 treatment note in which George noted that Colon "report[ed] good progress in dealing with her

12

anxiety and depression since the last visit[, and] . . . continues to have occasional panic attacks, but generally manages them rather well")); Tr. 26 (citing Tr. 424-25 (March 2016 treatment note at which time Colon reported to Joan Canzoneri, NP, that she had "improvement with mood lability with the start of Depakote," that her mood had been "feeling stable overall," and that she was "feeling more even and able to handle issues better"))). In assessing credibility, the ALJ was permitted to consider Colon's reports of improvement with medication. *See*, *e.g.*, *Elliott v. Comm'r of Soc. Sec.*, 2018 WL 4539579, *7 (W.D.N.Y. 2018) ("[t]hroughout his decision, the ALJ noted instances where [claimant] demonstrated improvement and had normal test results, and in his credibility analysis he found that [claimant's] impairments seem 'well controlled with treatment' and that '[claimant] has shown significant improvement in her condition'"[;] . . . [b]ecause the ALJ was entitled to consider [claimant's] medication, treatment, and other measures taken to relieve symptoms . . . and he supported his findings with substantial evidence, the [c]ourt finds that the ALJ did not err when he discounted her credibility based on her improved condition") (citations omitted).

The ALJ also considered the effect that Colon's mental health impairments had on her activities of daily living. As noted above, the ALJ referenced Colon's "mental health comprehensive behavioral health assessment," which O'Brien completed at Horizon in October 2014. (Tr. 26, 358). In that assessment, Colon noted that she was living with her sister and her sister's children and "fe[lt] like she [was] 'running a day care' because she need[ed] to babysit her nieces and nephews." (Tr. 26, 364). Colon "denied any issues or concerns with completing her [activities of daily living]." (*Id.*). The ALJ also identified the activities of daily living that Colon stated she could perform (Tr. 25) – another consideration that an ALJ may properly weigh in making his or her credibility evaluation. *See Herrington v. Berryhill*, 2019 WL 1091385, *7

13

(D. Conn. 2019) ("it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility") (collecting cases).

In light of these articulated considerations, as well as the ALJ's explicit reliance on Ippolito's evaluation (Tr. 29), the basis for the ALJ's credibility determination is evident. *See Brylski v. Astrue*, 2012 WL 1038622, *3 (W.D.N.Y. 2012) ("the ALJ was not required to discuss every credibility factor individually where, as here, the decision is sufficient to allow this [c]ourt to determine the basis for the ALJ's credibility determination"). Because I find that the ALJ's credibility determination is supported by substantial evidence, remand is thus not warranted on this basis.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**. Colon's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and Colon's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                        *s/Marian W. Payson*
                                                        MARIAN W. PAYSON
                                                 United States Magistrate Judge

Dated: Rochester, New York
        September 5, 2019